# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERRY BURKHALTER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **HARTFORD UNDERWRITERS INSURANCE COMPANY, ET AL.** | **NO. 17-01086-BAJ-SDJ** |

### FILING APPLIES TO:

| | |
|---|---|
| 17-cv-01086-BAJ-SDJ | *Burkhalter, et al., v. Hartford Underwriters Insurance Company* |
| 17-cv-01129-BAJ-RLB | *Kozero, et al., v. American National Property and Casualty Company* |
| 17-cv-01140-BAJ-RLB | *Henderson, et al., v. American National Property and Casualty Company* |
| 17-cv-01233-BAJ-EWD | *Armstrong, et al., v. Liberty Mutual Fire Insurance Company* |
| 17-cv-01235-BAJ-EWD | *Poynor, et al., v. Liberty Mutual Fire Insurance Company* |
| 17-cv-01264-BAJ-EWD | *Neal v. Liberty Mutual Fire Insurance Company* |
| 17-cv-01265-BAJ-EWD | *James, Jr., et al., v. Liberty Mutual Fire Insurance Company* |
| 17-cv-01266-BAJ-EWD | *Bresee, et al., v. Liberty Mutual Fire Insurance Company* |
| 17-cv-01303-BAJ-EWD | *Smith v. Liberty Mutual Fire Insurance Company* |
| 17-cv-01336-BAJ-RLB | *Turner, et al., v. American National Property and Casualty Company* |
| 17-cv-01589-BAJ-RLB | *Aucoin, et al., v. Bankers Specialty Insurance Company* |
| 17-cv-01599-BAJ-RLB | *Williams v. Bankers Specialty Insurance Company* |

### **RULING AND ORDER**

Each of the cases captioned above arises from the historic Baton Rouge flood

of August 2016. They are among dozens of similar flood insurance disputes that remain pending in this Court.

The issue presently before the Court is whether a write-your-own (WYO) carrier's failure to issue a written denial of an insured's claim under the Standard Flood Insurance Policy ("SFIP")[1] divests the Court of jurisdiction over a lawsuit seeking to enforce payment of that claim. The issue arises because in each of the above-captioned cases, the Defendant insurer has failed to issue a written denial, even at this late date. The parties have submitted show cause briefing, in which insurers and insureds alike universally agree that the Court maintains jurisdiction despite the missing denial letters.[2] For reasons explained below, the parties' briefing misses the mark, and fails to establish that jurisdiction is satisfied. Accordingly, the Court will *sua sponte* dismiss each of the above-captioned actions for lack of jurisdiction.

## I.  RELEVANT BACKGROUND

As recounted in the Court's show cause orders, the fact of the missing denial letters—and the legal issue of whether a missing denial letter divests the Court of jurisdiction—moved centerstage following *three* separate pretrial conferences in

---

[1] The SFIP appears at Appendix A(1) to Title 44, Part 61 of the Code of Federal Regulations. 44 C.F.R. § Pt. 61, App. A(1).

[2] In each of the above-captioned cases, the Plaintiffs' attorneys (Pandit Law Firm, LLC) and the Defendants' attorneys (Nielsen & Treas, LLC) are the same. In each case, the parties' show cause briefing is identical, save for the case caption. Because the issue of the missing denial is the same across all of the cases, and the briefing is carbon copied, the Court sees fit to issue one common ruling that will be docketed in each case.

For ease of reference, all citations included herein are drawn only from the docket of the first-filed action, *Burkhalter, et al. v. Hartford Underwriters Insurance Company*, No. 17-cv-01086-BAJ-SDJ.

which counsel reported a missing denial letter.[3] In each instance, the issue was raised for the first time after nearly *four years* of litigation. In each instance, counsel characterized the missing denial as a "jurisdictional" impediment, and invited the Court to devise a "creative" solution. In each instance, the Court rejected counsels' invitation to engage in jurisdictional gerrymandering, and issued an expedited briefing deadline to address the parties' jurisdictional concerns. In each instance, the parties settled rather than submit briefs as ordered.

Smelling a rat, the undersigned reviewed all remaining flood cases pending in this section. On July 8, 2021, the undersigned issued show cause orders in those cases where the record was ambiguous regarding the existence of a written denial—*sixteen* show cause orders, total. (Doc. 19). On July 12, 2021, the Court supplemented its July 8 Show Cause Order, requiring the parties to specifically brief whether the record in each case established a satisfactory "written denial," as that term is defined by the U.S. Court of Appeals for the Third Circuit in *Migliaro v. Fid. Nat'l Indem. Ins. Co.*, 880 F.3d 660 (3d Cir. 2018). (Doc. 21).[4] Collectively, these show cause orders required the parties to jointly submit proof of a written denial or, alternatively, show cause why, absent a written denial, the individual actions should not be dismissed for lack

---

[3] Counsel first raised this issue to the Court's attention on April 8, 2021, when they appeared at a pre-trial conference on behalf of the litigants in *Landry v. Liberty Mutual Fire Insurance Company*, No. 17-cv-1358. Counsel raised the issue *twice* more on July 1, 2021, when they appeared at pre-trial conferences on behalf of the litigants in *Gaudin v. Bankers Specialty Insurance Company*, 17-cv-01358, and *Walker v. Bankers Specialty Insurance Company*, 17-cv-01364.

[4] The U.S. Court of Appeals for the Fifth Circuit has not squarely addressed the meaning of "written denial" as that term is used in the SFIP, but has cited favorably to the Third Circuit's analysis in *Migliaro*. *See Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 780-81 (5th Cir. 2019).

of jurisdiction. (Docs. 19, 21).

Among the sixteen cases in which the Court entered a show cause order, only *four* returned proof of a written denial. In the *twelve* remaining cases—captioned above—it is now revealed that the Defendant insurer has *never* issued a written denial of the Plaintiffs' claims, either before *or* after Plaintiffs filed suit.[5] Put differently, in each of the above-captioned cases, Plaintiffs jumped the gun, and initiated litigation before the Defendants denied their claims. Thereafter, the Defendants sat on their heels, allowing these actions to proceed for nearly four years without raising the issue.

As will be explained, the fact of the missing denials is fatal to the viability of these actions.

## II. DISCUSSION

### A. Controlling Standards

#### i. Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction. The issue may be raised by parties, or by the

---

[5] In one additional case, *Castleberry, et al. v. American National Property and Casualty Company*, No. 17-cv-01138-BAJ-RLB, the Defendant insurer issued a written denial *after* the Plaintiff filed suit. The *Castleberry* case is subject to a separate show cause order, requiring the parties to brief whether a *post*-suit denial letter is sufficient to establish subject matter jurisdiction.

4

court *sua sponte,* at any time." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).

Importantly, "[a] case or controversy must be ripe for decision, meaning that it must not be premature or speculative. That is, ripeness is a *constitutional prerequisite* to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 834–35 (5th Cir. 2002) (emphasis added, footnotes omitted).

> Article III of the United States Constitution provides that federal courts have the power to decide only actual cases or controversies. The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language. The ripeness doctrine also is drawn from prudential reasons for refusing to exercise jurisdiction. The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.

*Choice* Inc. *of Texas v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012) (quotation marks, citations, and alterations omitted).

"A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987)). A case that is *not* ripe must be dismissed for lack of subject matter jurisdiction. *Shields*, 289 F.3d at 837; *accord Choice*, 691 F.3d at 718; *New Orleans Pub. Serv., Inc.*, 833 F.2d at 588.

### ii.  SFIP Construction And Relevant Terms

The U.S. Court of Appeals for the Fifth Circuit has repeatedly advised that the SFIP "must be strictly construed and enforced." *Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir. 1998). "The terms of the SFIP are dictated by FEMA, and cannot be waived

5

or modified by [any party]," *including* the defendant insurer. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005). These strict rules of construction *cannot* be relaxed, even if a "harsh" result follows. *Id.* at 387 (5th Cir. 2005) (discussing *Gowland*, 143 F.3d at 955); *accord Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 782 (5th Cir. 2019) ("[N]ot even the temptations of a hard case will provide a basis for ordering recovery contrary to the terms of a *regulation*, for to do so would disregard the duty of all courts to observe the conditions defined by Congress for charging the public treasury." (alterations omitted; quoting *Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 (5th Cir. 1998))).[6]

In relevant part, the SFIP provides:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim … . This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

SFIP, art. VII(R) ("Suit Against Us"). Interpreting precisely this provision, the Fifth Circuit recently affirmed that an insured must "turn square corners," *and* that the Court "must … narrowly construe when a policyholder may bring suit." *Cohen*, 924 F.3d at 780 (quotation marks omitted)).[7]

---

[6] The SFIP itself expressly states that its terms "cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." SFIP, art. VII(D) (Amendments, Waivers, Assignment). In these cases there is no evidence that FEMA relaxed the SFIP's time-of-filing requirements, allowing Plaintiffs to file suit before obtaining a written denial of their claims.

[7] The Court notes that the U.S. Court of Appeals for the Third Circuit relaxed the SFIP's Suit Against Us provision, by interpreting the term "written denial" to *include* "written rejection of a proof of loss … if, based on it, the policyholder files suit against the WYO carrier, thereby accepting the written rejection of a proof of loss as a written denial of the claim." *Migliaro v.*

6

## B. Discussion

It is now clear—for the first time, after nearly four years of litigation—that the Plaintiffs in each of the above-captioned actions filed suit *before* obtaining a written denial of their claim, in direct violation of the SFIP's requirement that any suit for coverage "must start … *after* the date of the written denial of all or part of the claim." SFIP, art. VII(R) (emphasis added). By prematurely filing suit, Plaintiffs deprived the Defendant insurers of an opportunity to adjust their claim within 60 to 90 days, as required under the SFIP.[8] *See* SFIP, art. VII(M)(1) (Loss Payment). Simply put, at the time of filing, Plaintiffs' claims were speculative—and therefore *not* ripe—because the possibility remained that the Defendant insurers would adjust Plaintiffs' claims favorably. In other words, when Plaintiffs sued, they were merely guessing that their insurers would deny coverage. More than guesswork is required to establish a ripe, justiciable case under Article III of the U.S. Constitution. *Shields*, 289 F.3d at 837; *accord Choice*, 691 F.3d at 718; *New Orleans Pub. Serv., Inc.*, 833 F.2d at 588. Lacking any written denial whatsoever, Plaintiffs' claims are not ripe and must be dismissed for lack of subject matter jurisdiction. *Shields*, 289 F.3d at 835

---

*Fid. Nat'l Indem. Ins. Co.*, 880 F.3d 660, 665 (3d Cir. 2018). The Fifth Circuit has not expressly adopted this construction, but, as stated *supra* n.4, has cited favorably to the Third Circuit's *Migliaro* decision. *See Cohen*, 924 F.3d at 780-81. Regardless whether *Migliaro's* interpretation of "written denial" applies generally in this Circuit, the parties concede that it does *not* apply here, because in these cases there is no written denial *or* rejection of a proof of loss. (*See* Doc. 22 at 7-8).

[8] The Defendants' show cause briefing complains of the missed opportunity to review Plaintiffs' claims, stating that in each case "there is no written denial letter because Defendant did not have the opportunity to issue a denial of Plaintiffs' supplemental flood loss claim leading to the question of jurisdiction at bar." (Doc. 22 at 8).

7

("[R]ipeness is a constitutional prerequisite to the exercise of jurisdiction.").[9]

The parties' show cause briefing fails to convince the Court otherwise. For their part, the Defendant insurers encourage the Court to look *past* the ripeness inquiry, and to exercise jurisdiction under 42 U.S.C. § 4072, 28 U.S.C. § 1331, 28 U.S.C. § 1337, and/or 28 U.S.C. § 1331. (Doc. 22 at 2-7). But this puts the cart before the horse. Certainly, had the Defendants issued written denials, jurisdiction would be appropriate under any or all of these statutes. But, as explained, "ripeness is a *constitutional prerequisite* to the exercise of jurisdiction." *Shields*, 289 F.3d at 835 (emphasis added). This case is not ripe because it still remains to be determined whether (and to what extent) the Defendants will deny payment of Plaintiffs' claims. The Court cannot simply ignore the parties' failure to satisfy a "constitutional prerequisite," even if the Court would otherwise unquestionably maintain jurisdiction over a SFIP dispute.[10]

---

[9] Alternatively—and in a closely related vein—these actions must be dismissed because without a written denial, the Court is forced to *assume* what form the Defendants' denial would take, *and* whether Defendants would deny Plaintiffs' claims in whole or in part. But any such assumption puts these cases in the hypothetical realm, which, in turn, puts the Court in the position of rendering an advisory opinion. *See Texas v. Travis Cty.*, 272 F. Supp. 3d 973, 980 (W.D. Tex. 2017) (explaining that federal courts may not answer "hypothetical legal questions," and must reserve a decision until a specific dispute arises among the parties (citing Flast v. Cohen, 392 U.S. 83, 96-97 (1968)), *aff'd*, 910 F.3d 809 (5th Cir. 2018). "[T]his Court lacks the jurisdiction and the judicial resources to issue an advisory opinion." *Amar v. Whitley*, 100 F.3d 22, 23 (5th Cir. 1996), and has declined to exercise jurisdiction over insurance disputes involving similarly abstract facts. *See, e.g., Tribute Real Estate, LLC v. United Artist Theatre Circuit, Inc.*, No. 10-cv-106 2012 WL 1590042, at *1 (M.D. La. May 4, 2012) (Brady, J.) (declining to issue declaration that "in the event of a covered loss," defendant would be obligated to make a claim under the insurance policy and to contribute the insurance proceeds towards the cost of repairs).

[10] Defendants insist that "a denial letter is not the predicate to a court's subject matter jurisdiction," and cite "a dozen cases from the Fifth Circuit where the Court exercised jurisdiction over an NFIP dispute and determined on the merits that the policyholder failed to meet the conditions precedent prior to filing the lawsuit." (Doc. 22 at 6, n.9). The best that

8

Alternatively, the Defendant insurers urge the Court to accept their pleadings denying liability as a substitute for written denials—namely, their Answers to the Plaintiffs' Complaints—insisting that their post-litigation conduct makes "the absence of a denial letter is irrelevant to the substantive dispute." (Doc. 22 at 10). The Court gives little weight to Defendants' post-litigation posturing. As a general rule, post-litigation filings are rarely admissible to support a claim under an insurance contract. *E.g.*, *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (affirming exclusion of defendant insurer's post-litigation conduct offered in support of plaintiff's bad faith claim). Moreover, on this point, Defendants' position is Janus-faced: they argue from one side that a denial letter is "irrelevant," while complaining from the other that Plaintiffs' rush to the courthouse limited their "opportunity to respond to [Plaintiffs'] supplemental flood loss claim[s]." (Doc. 22 at 2). Finally, and in any event, Defendants' argument flies in the face of the SFIP's express requirement that litigation "must start … after the date of the written denial," SFIP, art. VII(R), as well as the Fifth Circuit's admonishment that the Court "must … narrowly construe when a policyholder may bring suit." *Cohen*, 924 F.3d at 780.

The Plaintiff insureds take a different tack in their show cause briefing, arguing that the SFIP is ambiguous regarding when an insured may sue her insurer for coverage. The Court rejects this argument outright. There is absolutely no

---

can be said of Defendants' cases is that they are inapposite: most include an express reference to the insurer's written denial; the remainder are silent on the point. In any event, not one of Defendants' cases addresses the issue presented here—specifically, whether a written denial is a predicate to suit under the SFIP.

9

ambiguity in the SFIP's requirement that litigation "*must* start … *after* the date of the written denial," SFIP, art. VII(R) (emphasis added), *or*, for that matter, the Fifth Circuit's admonishment that this provision must be strictly construed, *Cohen*, 924 F.3d at 780. *Cf. Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287 (5th Cir. 2009) (distinguishing between the SFIP's use of the words "must" and "may," and finding the former is mandatory whereas the latter is optional).

Moreover, the Court does not share the Plaintiffs' concerns that requiring a written denial before a lawsuit produces an "outrageous result" because it would allow WYO Carriers "to prevent jurisdiction from ever existing by simply never denying the claim." (Doc. 23 at 4-5). Indeed, such concerns are belied by the facts in each of the above-captioned cases, where the Defendant insurers issued payment on the Plaintiffs' original Proofs of Loss, and were in the process of reviewing the Plaintiffs' "supplemental claims" when Plaintiffs filed suit. (*See* Doc. 22 at 2). In this light, Plaintiffs' "outrage" amounts to handwringing. The same arguments have been rejected by Courts facing similar jurisdictional impediments to federal flood insurance actions. *See, e.g., Carmouche v. Nat'l Flood Ins. Program*, No. 17-cv-11479, 2018 WL 5279121, at \*6 (E.D. La. Oct. 24, 2018) (Vance, J.) ("Plaintiff complains that the outcome the Court reaches today would allow FEMA to ignore an insured's claim forever, because a claimant will not have recourse in federal court until FEMA disallows all or part of her claim. But plaintiff's concern is considerably belied by the fact that FEMA has not treated her claims idly."); *but see Altman v. Napolitano*, No. 10-cv-487, 2013 WL 788452, at \*1 (S.D. Tex. Mar. 1, 2013) (Froeschner, M.J.) ("To

10

accept FEMA's argument would allow FEMA to bar any suit by simply electing to withhold, forever, any written denial of the claim.").

In sum, hornbook jurisdictional principles and the plain language of the SFIP dovetail, and compel the conclusion that the above-captioned actions are not ripe because Defendants have not denied Plaintiffs' claims under Plaintiffs' SFIPs. These cases will be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

The Court's frustration at this turn of events cannot be overstated. The parties' conduct preceding this Order raises many questions, particularly regarding counsels' duties of professionalism, candor, and fair-dealing. Why did Plaintiffs (and Plaintiffs' counsel) rush to file suit a mere days after submitting supplemental Proofs of Loss, without first obtaining written denials? Why didn't Defendants (and Defendants' counsel) immediately raise the issue of the missing denial letters, and instead allow nearly four years to pass with no challenge whatsoever? Why did counsel avoid briefing the issue after it was raised in three separate pretrial conferences, and only submit show cause briefing *after* the Court conducted its own review of the records in the remaining flood cases? What penalties, if any, may be imposed based on Defendants' ongoing failure to adjust Plaintiffs' flood-related claims, which are now five years old?

Such questions remain for another day. For now it is clear, based on the undisputed facts and the controlling legal principles, that Plaintiffs' actions are premature and must be dismissed for lack of subject matter jurisdiction. *Shields*, 289 F.3d at 837.

11

Accordingly,

**IT IS ORDERED** that the above-captioned actions are each **DISMISSED** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that a copy of this Order shall be filed in each of the above-captioned actions.

Judgments shall be issued separately.

Baton Rouge, Louisiana, this 22nd day of July, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**